UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>928 OAKLEY STREET, NEW BEDFORD,<br>MASSACHUSETTS,<br>Defendant. | )<br>)<br>)<br>)<br>)Civil Action No. 04-10642-RWZ<br>)<br>)<br>)<br>) |

## AMENDED VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to Title 21, United States Code, Section 881 (a)(7), alleges that:

1.   This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345, 1355, and 1356.  Venue is appropriate pursuant to 28 U.S.C. § 1395.

2.   The in rem Defendant Property is now, and, during the pendency of this action, will be within the jurisdiction of this Court.

3.   The Defendant Property consists of the real property, including all buildings and appurtenances, located at 928 Oakley Street, New Bedford, Massachusetts (the "Defendant Property").

4.   As detailed in the Affidavit of United States Drug Enforcement Administration Special Agent Daniel J. Forde, attached hereto as Exhibit A, and incorporated herein by reference, the United States has probable cause to believe that the Defendant Property constitutes property used, or intended to

be used, in any manner or part, to commit, or to facilitate the commission of, a violation of Title 21 (the Controlled Substances Act).

5.    The Defendant Property is, therefore, subject to forfeiture to the United States of America, pursuant to 21 U.S.C. § 881(a)(7).

WHEREFORE, the United States of America prays:

1.    That a Warrant and Monition, in the form submitted herewith, be issued to the United States Marshal for the District of Massachusetts commanding him to give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2.    That judgment of forfeiture be decreed against the Defendant Property;

3.    That thereafter, the Defendant Property be disposed of according to law; and

4.    For costs and all other relief to which the United

States may be entitled.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By: *Shelbey L. Wright*
SHELBEY L. WRIGHT
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: April *16*, 2004


## VERIFICATION

I, United States Drug Enforcement Administration Special

Agent Daniel J. Forde, state that I have read the foregoing

Verified Complaint for Forfeiture In Rem and the Affidavit,

attached as Exhibit A, and that the contents thereof are true to

the best of my knowledge, information, and belief.

*Daniel J. Forde*
Daniel J. Forde, Special Agent,
United States Drug Enforcement
Administration

Dated: April *13th*, 2004

COMMONWEALTH OF MASSACHUSETTS

Bristol, ss.                                                    Boston

        Then personally appeared before me the above-named Daniel J.
Forde, Special Agent of the United States Drug Enforcement
Administration, who acknowledged the foregoing to be true to the
best of his knowledge, information and belief, on behalf of the
United States of America.

        Subscribed to and sworn to before me this ___13th___ day of
April, 2004.

                                    *Lorraine E. Williams*
                                    Notary Public
                                    My commission expires: 7-28-06

N:\LTalbot\wright\Medeiros\928 Oakley Property\complaint1.wpd

LORRAINE E. WILLIAMS
NOTARY PUBLIC
COMMISSION EXP 7/28/06

**Exhibit A**

**AMENDED AFFIDAVIT OF DANIEL J. FORDE**

I, Daniel J. Forde, state the following under oath:

1.    I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.  I have been employed as a Special Agent of the United States Drug Enforcement Administration ("DEA") since 1998.  I have been assigned to the New Bedford, Massachusetts, resident office since July 2001.  Prior to that I served in the Philadelphia, Pennsylvania, Field Division.

2.    During my employment with DEA, I have participated in numerous investigations relating to the distribution of controlled substances, including cocaine, heroin, and other substances in violation of the federal anti-drug laws, including Title 21, United States Code, Section 846.  I have received training in the field of narcotics enforcement and investigations.  I am familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal drugs.  I have been the affiant on numerous affidavits in support of arrest warrants and other applications.

3.    I submit this Affidavit in support of a Complaint for Forfeiture in Rem against the real property and buildings located at 928 Oakley Street, New Bedford, Massachusetts, which is owned by Peter J. and Joyce C. Medeiros (the "Defendant Property"). As set forth below, I have probable cause to believe that the Defendant Property constitutes property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of Title 21 (the Controlled Substances Act). As a result, the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

## Summary of the Oxycodone Investigation

4.    In 2000, the New Bedford DEA office opened an investigation of Peter Medeiros ("Medeiros"), a Norfolk County corrections officer, who was distributing cocaine. The investigation began using a DEA Confidential Source of Information ("CS-1"). According to CS-1, Medeiros was distributing over two kilograms of cocaine per month. Source information and surveillance showed that Medeiros was living well beyond his means, operating a Mercedes, a Lexus, a Jeep Cherokee, and other vehicles.

5.    CS-1 made three controlled buys of approximately ½ ounce (14 gram) quantities of powder cocaine between December of 2000, and March of 2001. Each of these buys was recorded and

2

surveilled by the DEA. However, agents became concerned about the truthfulness of CS-1, and eventually terminated CS-1's cooperation with the investigation. Despite CS-1's termination, the information provided by CS-1 on Medeiros was corroborated by law enforcement. Medeiros was subsequently arrested by the Commonwealth of Massachusetts for charges including cocaine trafficking, and was prosecuted.

6.    In the end of 2001, State Trooper Donna Heinz (who is assigned to the DEA drug diversion group in Worcester, Massachusetts) became aware of possible prescription fraud being committed by Medeiros. During the course of the investigation, DEA agents learned that Medeiros had been out on disability from his job as a corrections officer for an extended period of time, purportedly with a back injury. As part of the treatment for his alleged injury, Medeiros was treated by a chiropractor in New Bedford named David Mitzan ("Mitzan").

7.    Mitzan had a business relationship with two physicians, Paul Koerner and Shakeel Awaisi ("Dr. Awaisi"). These doctors would see patients of Mitzan's a few times a month. Unlike Dr. Mitzan (a chiropractor), these doctors are authorized to write prescriptions. The doctors practiced under the name Parkside Orthopedic Rehabilitation, an entity that exists on site at Dr. Mitzan's office. On or about November 30, 2001, a pharmacist at a Walgreen's pharmacy in New Bedford contacted a state drug

3

diversion investigator regarding forged prescriptions for OxyContin (a brand name of oxycodone) that bore Dr. Awaisi's signature. She stated that she had called Parkside Orthopedic Rehabilitation to verify a prescription for OxyContin. Dr. Awaisi advised the pharmacist that he had not written the prescription and advised that it was a forgery. The pharmacist identified additional prescriptions she had filled in recent months and Dr. Awaisi indicated that these also were forgeries.

8.    Some of the forged prescriptions were written from a prescription pad in the name of "New Bedford Medical Associates." The pharmacist recognized the telephone number listed on the pad as being a telephone number that Medeiros had provided in the past. The investigation revealed that the number was for a cellular telephone number subscribed to in the name of Joyce Medeiros, Peter Medeiros' wife. The pharmacist called the number and got a recording for "New Bedford Medical Associates" that indicated that no doctors were available. The pharmacist identified forged prescriptions in the names of Stephen Lopes, Douglas Lopes, and Justin Lopes. She further noted that Peter Medeiros usually dropped off and picked up the prescriptions for Stephen Lopes.

9.    Subsequently, several pharmacy branches in the New Bedford area detected additional forged prescriptions, including ones in the names of Peter Medeiros, Joyce Medeiros, Nicole

Lopes, Myron Pina, and David Mitzan. Most of the prescriptions bore Dr. Awaisi's signature, but a few bore the signature of Dr. Paul Koerner. Both doctors have reviewed all of the fraudulent prescriptions and confirmed that they are forgeries. In all, dozens of fraudulent prescriptions were identified. Public or private health insurance plans paid for nearly the entire cost of these prescriptions.

10. On April 8, 2003, Peter Medeiros, Joyce Medeiros, and five others were indicted by a Grand Jury sitting within the District of Massachusetts. The Indictment (Criminal Action No. 03-10095-RWZ) charged the following: Conspiracy to Distribute, and to Possess with Intent to Distribute, Oxycodone, in violation of 21 U.S.C. § 846; Conspiracy to Fraudulently Obtain Possession of Oxycodone, in violation of 21 U.S.C. § 846; Fraudulently Acquiring Oxycodone, in violation of 21 U.S.C. § 843(a)(3); Distribution of Cocaine, in violation of 21 U.S.C. § 841(a)(1); Health Care Fraud, in violation of 21 U.S.C. § 1347; and Aiding and Abetting, in violation of 18 U.S.C. § 2. The Indictment also contained a criminal forfeiture allegation.

11. Peter Medeiros pleaded guilty to a Superseding Indictment on March 19, 2004. The Court deferred acceptance of a the formal plea of guilty pending preparation of a pre-sentence report. In addition, Joyce Medeiros pleaded guilty to twenty separate counts of a Superseding Indictment on March 23, 2004.

5

## The State Cocaine Investigation

12.  In July of 2002, the Bristol County Drug Task Force, including one of the Task Force Agents who had worked on the federal investigation, arrested Medeiros and executed a search warrant at Medeiros' residence (the Defendant Property). Medeiros tried to flee, but was arrested with 16 grams of cocaine and a small amount of marijuana in his car.  The search of the Defendant Property yielded a gun, 10 grams of cocaine, marijuana, documents, and over $2,700.

13.  On March 5, 2004, I observed an interview with a second Confidential Source of Information ("CS-2"), an associate of Medeiros, who provided information regarding Medeiros' drug involvement.  I also reviewed a report by another agent who was present during this interview.  CS-2 stated that he had met Medeiros in late 1997 or early 1998.  Within the first week of meeting Medeiros, CS-2 knew Medeiros was selling and using cocaine.  CS-2 would hang out with Medeiros, and received up to $100 worth of cocaine at a time.  According to CS-2, Medeiros would frequent local bars such as "The Last Laugh," where Medeiros would openly use and sell cocaine.  CS-2 advised that Medeiros supplied cocaine to individuals at his gym and to his neighbors.

14.  According to CS-2, in 2001, Medeiros was making more than $4,000 per week selling drugs.  From 1999 to 2001, CS-2

estimated, Medeiros had fifteen to twenty people to whom he would sell cocaine every week. Medeiros would sit in the driveway of the Defendant Property with a cooler filled with beer and cocaine, from which he would supply customers. On one occasion, according to CS-2, a mailman delivered mail to Medeiros' house, the Defendant Property, along with a $100 bill. Medeiros took the mail and provided the mailman with cocaine.

15.    CS-2 stated that Medeiros not only used cocaine, but also smoked marijuana. The largest amount of cocaine CS-2 saw Medeiros with was approximately the size of two oranges, estimated to be about ten ounces. The investigation revealed that Medeiros stored cocaine in the Defendant Property, in close proximity to his kitchen curtain valance, and also kept approximately $200 to $300 worth of cocaine underneath the kitchen curtain. Medeiros also stored cocaine at (co-defendant) Douglas Lopes' apartment, in various locations.

16.    According to CS-2, after Medeiros learned that law enforcement had an investigative interest in him, he removed the cocaine from the Defendant Property and placed it in a wooded area located behind and to the right of the Defendant Property.

17.    CS-2 stated that his last discussion with Medeiros was in November or December 2003. CS-2 said that in the past he has seen individuals purchase and use cocaine at the Defendant Property. It appeared that Medeiros was moving cocaine on a

weekly basis.  CS-2 believed that Medeiros must have retrieved the cocaine locally because it was always available to him.

18.  On March 11, 2004, I observed an interview with a third Confidential Source of information ("CS-3").  CS-3 stated that Medeiros used to have a "cast of characters" who would come by and visit him.  In the past, CS-3 had hung out with Medeiros to have beers, but since Medeiros' arrests, CS-3 has had very little contact with Medeiros.  Although CS-3 has never seen Medeiros use cocaine or marijuana, he has smelled marijuana coming from the Defendant Property.

19.  CS-3 stated that a couple of months prior to Medeiros being arrested for the first time, CS-3 was aware of an occasion where a Tupperware container filled with a substance believed to be cocaine was found on the property of a neighbor of Medeiros. CS-3 indicated that Medeiros had a heated conversation with the neighbor, who had placed the container on the property of Medeiros.

20.  On October 27, 2003, and November 12, 2003, law enforcement agents and an Assistant U.S. Attorney conducted an interview of Douglas Lopes, one of Medeiros' co-defendants.  I have reviewed the report of investigation regarding this interview.

21.  Lopes stated that he had known Medeiros since Medeiros was 14 years old.  He stated that his relationship with Peter and

Joyce Medeiros was very close. At some point, Lopes found out that Medeiros was using cocaine and offered to help him. Lopes said that Medeiros suggested that he provide Lopes with cocaine so that Lopes would not get "ripped off in the streets." Lopes approximated that this occurred during the time that Medeiros was a Massachusetts State Correctional Officer. He stated that he had previously been buying his cocaine in clubs and in the street, but that he then began buying about $50 worth of cocaine per week from Medeiros. Lopes described this as the early stages of his cocaine use and said that it was approximately six years prior to the interview.

22. Lopes stated that, as a result of a broken leg and a bad back, he began to obtain OxyContin prescriptions from Medeiros. At Medeiros' request, Lopes would fill prescriptions and then call Medeiros, who would come and pick up the pills and pay Lopes $300 for "helping [him] out." Lopes stated that, after a while, he realized that Medeiros was dealing OxyContin. Because Lopes was getting money to subsidize his habit, he continued. Lopes stated that Medeiros gave him cocaine as well as nice gifts on occasion. He stated that Medeiros made it known that he had a lot of money, jewelry, and clothes.

23. Lopes stated that he bought cocaine only on weekends and that he usually purchased it from Medeiros. Lopes said that he had been purchasing cocaine, almost every week, from Medeiros

9

prior to Medeiros getting married, until Medeiros was arrested on state related charges. Lopes said that, unless he was sharing the cocaine with someone else, he would purchase $50 worth of cocaine per week from Medeiros. In instances when Lopes was ordering cocaine to share, he sometimes ordered as much as $150 worth of cocaine from Medeiros.

24. Lopes stated that Medeiros would normally deliver the cocaine, although there were instances when he (Lopes) would go to Medeiros' home on Oakley Street in New Bedford (the Defendant Property), for Medeiros to sell him cocaine. Lopes stated that Medeiros had been selling cocaine from the Defendant Property by either having customers come to the Defendant Property to meet him or by leaving the Defendant Property to go deliver to them. Lopes was present on some of these occasions when Medeiros went to meet customers, as well as when customers came to Medeiros' house, the Defendant Property, to buy cocaine. Although he knew people bought from and used cocaine with Medeiros, the actual purchases and exchanges of cocaine always happened out of his view. Lopes stated that there was conversation before and after the fact, however, to the effect that people would be coming to pick up cocaine.

25. Lopes stated that he had given Medeiros a key to his apartment, and Medeiros had told him that he (Medeiros) was storing cocaine there. Medeiros also offered to give Lopes free

10

cocaine for Lopes' allowing Medeiros to store his cocaine in the refrigerator at Lopes' apartment.  Lopes stated that Medeiros kept his cocaine either at his (Lopes') apartment in the refrigerator or at his own (Medeiros') house, (the Defendant Property), in the tool drawer in the garage.

**Financial Information**

26.   Reviews of bank accounts maintained by Peter and Joyce Medeiros during the period of oxycodone and cocaine distribution activity show large, unexplained cash deposits.  Over $38,000 in cash deposits were made into their accounts in 2000 and over $80,000 in cash deposits were made into the accounts in 2001. The amount of cash deposits into the bank accounts in 2001 far exceeded the amount of income they declared on their joint tax return (approximately $35,000).  The cash deposits trailed off dramatically immediately after the prescription fraud scheme was detected.

27.   Further, as described in Paragraph 12, as part of the state drug investigation, a search warrant was executed at the Defendant Property on or about July 11, 2002.  A search warrant was also executed on a safety deposit box, and 101 $100 savings bonds, 23 $200 savings bonds, a certificate of deposit for $42,636.03, a certificate of deposit for $45,294.41, and a passbook showing a balance of $10,622.62 were recovered.

**Conclusion**

11

28.    Based on the information detailed above, I have probable cause to believe that the Defendant Property constitutes property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of Title 21 (the Controlled Substances Act).  As a result, the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).


        Signed under the pains and penalties of perjury this 13th day of April, 2004.

                        _____
                        Daniel J. Forde
                        United States Drug Enforcement
                        Administration



    Subscribed to and sworn to before me this 13th day of April, 2004.

            _____

                LORRAINE E. WILLIAMS
                  NOTARY PUBLIC
              COMMISSION EXP 7/28/06

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>928 OAKLEY STREET, NEW BEDFORD,<br>MASSACHUSETTS,<br>　　　　　Defendant. | )<br>)<br>)<br>)Civil Action No. 04-10642-RWZ<br>)<br>)<br>)<br>)<br>) |

## AMENDED WARRANT AND MONITION

To:　The United States Marshal for the District of
　　　Massachusetts, or his Deputies

We Command You that you give notice to all persons concerned

that a Verified Complaint for Forfeiture In Rem (the

"Complaint"), a copy of which is attached hereto, has been filed

by the United States of America against the defendant real

property, including all buildings and appurtenances, located at

928 Oakley Street, New Bedford, Massachusetts (the "Defendant

Property"), more particularly described in the Complaint for the

forfeiture of the Defendant Property to the United States of

America pursuant to Title 21, United States Code, Section

881(a)(7).

This Court has found probable cause for forfeiture.

Accordingly, you are hereby directed to serve, and give notice

of, the Complaint by:

　　　(1)　Publishing notice of the United States' intent to
　　　　　forfeit the Defendant Property at least once for three
　　　　　(3) successive weeks in the Boston Herald or any other
　　　　　newspaper having a general circulation in this
　　　　　District;

(2)    Serving the Defendant Property by posting a copy of this Warrant and Monition and the Complaint upon the Defendant Property; and

(3)    Mailing a copy of this Warrant and Monition, together with a copy of the Complaint to:

Peter Medeiros, #24714-038
Plymouth (M.C.I.)
P.O. Box 207
South Carver, MA 02366

Joyce C. Medeiros
928 Oakley Street
New Bedford, MA 02745

Thomas E. Badway, Esquire
as counsel for Joyce Medeiros
700 North Main Street
Providence, RI 02904

New Bedford Assessor's Office
133 William Street
Room 109
New Bedford, MA 02740

David P. Sorrenti, Esquire
as counsel for Peter Medeiros
Sorrenti & Delano, PA
23 North Pearl Street
Brockton, MA 02301

John J. Bevilacqua, Esquire
as counsel for Joyce Medeiros
380 Broadway
Providence, RI 02909

Compass Bank
Attn: Louis Steiblin
One Compass Place
New Bedford, MA 02740

by certified mail, postage prepaid and return receipt requested, or by serving such copies on the listed parties by hand.

You Are Further Commanded that pending further order of the Court, you are **not** to take possession of, seize, or otherwise take into custody the Defendant Property, and you are **not** responsible for the care or maintenance of the Defendant Property during the pendency of this forfeiture action.

You Are Further Commanded, if you are granted permission by the owners or possessors of the Defendant Property, to enter and forthwith conduct an inventory and inspection thereof.

You Are Further Commanded to give due notice by appropriate

-2-

service of process, as provided herein, to all persons who claim
an interest in the Defendant Property, or assert that the
Defendant Property should not be condemned or disposed of
pursuant to the prayer of the Verified Complaint for Forfeiture
In Rem.  Upon execution of this process, you are directed further
to file the execution in this Court with your return thereon.

ALL CLAIMS TO THE DEFENDANT PROPERTY MUST BE FILED WITH THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
AND SERVED UPON THE UNITED STATES ATTORNEY'S OFFICE, ASSET
FORFEITURE UNIT, 1 COURTHOUSE WAY, SUITE 9200, BOSTON,
MASSACHUSETTS 02210, WITHIN THIRTY (30) DAYS AFTER PROCESS HAS
BEEN EXECUTED OR WITHIN SUCH ADDITIONAL TIME AS MAY BE ALLOWED BY
THIS COURT.  ALL ANSWERS TO THE COMPLAINT MUST BE FILED WITH THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
AND SERVED UPON THE UNITED STATES ATTORNEY'S OFFICE, ASSET
FORFEITURE UNIT, 1 COURTHOUSE WAY, SUITE 9200, BOSTON,
MASSACHUSETTS 02210, WITHIN TWENTY (20) DAYS AFTER THE FILING OF
THE CLAIM.  CLAIMS MUST BE FILED IN ACCORDANCE WITH THE FEDERAL
RULES OF CIVIL PROCEDURE, SUPPLEMENTAL RULES FOR CERTAIN
ADMIRALTY AND MARITIME CLAIMS.  THE PROCEDURES FOR FILING A
PETITION FOR REMISSION OR MITIGATION ARE SET FORTH IN 28 C.F.R.
PART 9.  IN ADDITION TO THE PROCEDURES MANDATED BY THOSE

REGULATIONS, A COPY OF ANY PETITION FOR REMISSION OR MITIGATION SHOULD BE FILED WITH THE SEIZING AGENCY, WHICH IS THE UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, JFK FEDERAL BUILDING, ROOM E-400, 15 NEW SUDBURY STREET, BOSTON, MASSACHUSETTS 02203, ATTENTION ASSET FORFEITURE GROUP.

Tony Anastas, Clerk
U.S. District Court

By: _____
    Deputy Clerk
    Date:   _____, 2004

APPROVED AND SO ORDERED:

_____
RYA W. ZOBEL
United States District Judge
Date:   _____, 2004

-4-